In The United States District Court
For The Western District Of Wisconsin

Eric D. Conner
                    Plaintiff,


        -V-                              Case No. 19-cv-921-bbc


Heather Schwenn,
Anthony Broadbent,
Tomas Belz,
Gary Boughton,
Mark Kartman,
Jim Schwochert,
Peter Jaeger,
Ellen Ray,
Brad Hompe,
Cindy O'Donnell,
and Andrew Huce,
                    Defendants


        Sworn Civil Complaint Under
            42 U.S.C. § 1983.


Eric Conner                         WSPF
Eric Conner                         P.O. Box 1000
#420475                             Boscobel, WI
Prose-litigant                      53805-1000
(608) 375-5650

# TABLE OF CONTENTS

Page

Introduction . . . . . . . . . 1, 2

Jurisdiction . . . . . . . . 2, 3

Exhaustion OF
Administrative Remedies . . . . . . 3

Parties To Action . . . . . . . . . 4 — 8

Chapter DOC 308,
Administrative Confinement . . . . . . . 8, 9

Progressing Through Administrative
Confinement Effectively (PACE) . . . . . 9 —12

Factual Background
From WCI . . . . . . . . . . . . 12 —14

Statement OF Claims—
Denial OF Due Process/
Retaliation . . . . . . . . . 14 — 43

Complaint to the Institution
Complaint Examiner (ICE) . . . . . . 43 — 46

i

Civil Complaint-
(Western District Of Wisconsin)
TABLE OF CONTENTS

Page

Appeal to the Appropriate
Reviewing Authority (ARA) . . . . . . . . 46

Appeal to the Corrections
Complaint Examiner (CCE) . . . . . 47, 48

Decision of the
DOC Secretary . . . . . . . . . . 48, 49

Plaintiff's Request to
the CCE and Secretary          49, 50

Equal Protection . . . . . . . . 51-57

Deliberate Indifference . . . . . . 58-

Conditions Of Administrative
Confinement Status . . . . . . . 70-81

Claims For Relief . . . . . . . . 81-87

Relief Requested . . . . . . . . 87-90

Jury Demand . . . . . . . . . . 91

ii

(Civil Complaint)
(Western District Of Wisconsin)

# TABLE OF CONTENTS

Page

Request to Proceed In
District Court Without
Prepaying The Full Filing
Fee — Service Fee. . . . . . . . . . . 91

iii

In The United States District Court
For The Western District Of Wisconsin

Eric D. Conner,
            Plaintiff,

-v-                                  Case No. _____

Heather Schwenn, Anthony
Broadbent, Tomas Belz,
Gary Boughton, Mark
Kartman, Jim Schroedert,
Peter Jaeger, Ellen Ray,
Brad Hompe, Cindy O'Donnell,
and Andrew Hulce,
            Defendants.

_____

Sworn Civil Complaint Under
42 U.S.C. § 1983.

_____

    I, Eric Conner, declare under the
penalty of perjury the following to the best
of my knowledge:

    I.        Introduction

1.1) This is a civil rights action filed by -

(1)

(Civil Complaint)

<u>Western District Of Wisconsin</u>

Conner, a state prisoner, For punitive damages and injunctive relief under 42 U.S.C. § 1983, alleging that the defendants violated the Eighth Amendment's prohibition against Cruel and Unusual punishment - (by Keeping him in administrative Confinement (AC)), Deliberate Indifference to his serious Mental health needs and Conditions Of Confinement in violation of the Eighth Amendment to the United States Constitution.

2.)        Further alleging the defendants deprived him of his Substantive and procedural Due Process rights, Equal Protection of the Laws, in violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses to the United States Constitution.

3.)        Retaliation For using the "Prison's grievance System" in violation of the First Amendment to the United States Constitution.

II.        Jurisdiction

(2)

(Civil Complaint)

Western District OF Wisconsin

2.1)    Jurisdiction OF this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a Civil action arising under the Constitution OF the United States.

2.2)    Jurisdiction OF the Court is invoked pursuant to 28 U.S.C. § 1343 (a) (3) in that this action seeks to redress the deprivation under color OF state law, OF rights secured by Act OF Congress providing FOr Equal rights OF persons within the Jurisdiction OF the United States.

## III.   Exhaustion OF Administrative Remedies.

3.1)    Whereas "Truely" and "Really" available and Free OF any tactical and procedural pretextual Obstructions, Plaintiff has exhausted all available administrative remedies with respect to all Claims and all defendants. See Exhibits Marked: A, B, and C - attached.

(3)

(Civil Complaint)

Western District Of Wisconsin

IV.        Parties To Action

4.1.)   Plaintiff: Eric D. Conner, is Currently imprisoned in the Wisconsin Secure Program Facility (WSPF), P.O. Box 1000, 1101 Morrison Drive, Boscobel, WI. 53805; and was incarcerated at WSPF during the events described in this Complaint.

4.2.)   Defendants: all eleven(11) defendants: Huire, Schwenn, Broadbent, Belz, Boughton, Kartman, Jaeger, Ray, Schroochert, Hompe and O'Donnell; were all DOC employees at WSPF, during the events described in this Complaint, and their last Known location of employment: (WSPF, 1101 Morrison Drive, Boscobel, WI. 53805).

4.3.)   Defendant: Heather Schwenn is a License Psychologist For the psychological Service unit (PSU) at WSPF, and was acting in that Capacity in the events described here. She is being sued in her individual Capacity.

4.4)   Defendant: Tomas Belz is a Correctional Officer (CO), and was acting in that Capacity

(4)

(civil complaint)

<u>Western District OF Wisconsin</u>

in the events described here. He is sued in his individual capacity.

4.5.)   Defendant: <u>Andrew Hulce</u> is a lieutenant (LT.) at WSPF, and in the events described here, was in charged of drafting up Administrative Confinement (AC) recommendations. He is sued in his individual capacity.

4.6.)   Defendant: <u>Anthony Broadbent</u> is a Corrections Unit Supervisor (CUS) For Echo and Foxtrot WSPF general population units, and in the events described here, was acting as the AC-hearing officer (chairman). He is sued in his individual capacity.

4.7.)   Defendant: <u>Gary Boughton</u> is the Warden at WSPF, and in the events described here, is responsible for reviewing all administrative appeals and acting as the Reviewing authority for complaints filed by WSPF-inmates. He is sued in his individual capacity.

4.8.)   Defendant: <u>Mark Kartman</u> is the Security Director at WSPF. In that

(5)

(Civil Complaint)

<u>Western District Of Wisconsin</u>

Capacity, he is generally responsible For the development, implementation and monitoring or overall Security, goals, policies, and procedures OF the institution.

4.9.) He is also responsible For the security program For areas oF the institution including Central Control, the armory, perimeter, program areas, visiting, reception, training, mail and property. He is sued in his individual Capacity.

4.10.) Defendant: <u>Peter Jaeger</u> is the Deputy Warden at WSPF and is in charge oF the Supervision and discipline of all Correctional staFF. In the events described here, he was acting as the "Appropriate Reviewing Authority" (ARA) oF plaintiFF's-inmate complaint. He is sued in his individual Capacity.

4.11) Defendat: <u>Ellen Ray</u> is employed by the Wisconsin Department of Corrections (DOC) as an Institution Complaint Examiner (ICE) and Litigation Coordinator at WSPF.

(6)

(Civil Complaint)
Western District OF Wisconsin

4.12.)    In those Capacities, She is the Custodian of inmate Complaints Filed by inmates while incarcerated at WSPF. She also has access to records which are generated and/or maintained at the institution and to which pertain to the inmates who are incarcerated at WSPF. She is sued in her individual Capacity.

4.13.)    Defendant: Jim Schwochert is the Division Of Adult Institutions (DAI) administrator. He is sued in his individual and official Capacities. (3099 East Washington Avenue., P.O. Box 7925, Madison, WI 53707).

4.14.)    Defendant: Brad Hompe is the Corrections Complaint Examiner (CCE). He is sued in his individual and official Capacities. (3099 East Washington Avenue. P.O. Box 7925, Madison, WI 53707).

4.15.)    Defendant: Cindy O'Donnell is the Department Of Corrections (DOC) Secretary. She is sued in her individual and official Capacities. (3099 East Washington

(7)

(civil complaint)
Western District OF Wisconsin
Avenue. P.O. Box 7925, Madison, WI 55707).

4.16.)   All the defendants are state agents
in their roles and positions, and could not
have acted or carried out the various forms
of deprivations without the state power.


V.        Chapter DOC 308
        Administrative Confinement


5.1.)    Pursuant to Wis. Stat. § DOC
308.04(1); Administrative Confinement
Status (AC) is an involuntary nonpunitive
Status For the segregated confinement of an
Inmate whose continued presence in general
population poses a serious threat to life,
property, self, staff or other inmates, or to
the security or orderly running of the
institution. Id.

5.2.)   Inmates on AC are regularly assessed
and evaluated to determine if it is necessary
For the inmate to continue in AC. 308.04 (10).


(8)

(civil complaint)
Western District OF Wisconsin

5.3.)    The Administrative Confinement
Review Committee (ACRC) evaluates evidence,
listens to statements from the inmate and
makes a determination as to whether or not
the inmate's placement on AC is necessary.
308.04 (7)(8)(10).

5.4.)   The Warden and (DAI)-administrator
then reviews the ACRC's decision and make
their own decisions to retain or release an
prisoner From AC-status, when the inmate
appeal the ACRC's decision to them. 308.04
(9) (11) (c).

5.5.)   The decision of the Warden and
administrator is Final except that the inmate
may challenge any procedural errors through
the Inmate Complaint Review System under
Ch. Doc 310. 308.04 (11) (c).

VI.      Progressing Through Administrative
          Confinement Effectively (PACE).

6.1.)   All inmates on Administrative

(9)

(Civil complaint)

Western District Of Wisconsin

Confinement (AC) shall be placed in the PACE program. DAI policy # 308.00.01 New effective date: May 7, 2018.

6.2.) Prisoners in AC status may attempt to earn their way into WSPF's general population (GP) by participating in the PACE - program.

6.3.) PACE is organized into Five (5) Phases that require the inmate to make progress in a number of areas in order to proceed to the next phase; and restrictions lessen as inmates progresses through each Phase.

6.4.) For example, inmates on Phases 1 through 3 — are in Full restraints (handcuffs-Shackles) each time they leave their cells to go to recreation, library, HSU, etc..; whereas inmates on phase 4 — come out their cells without restraints and escorted by one (1) unit officer whereever they go.

6.5.) A multi-disciplinary team conducts

(10)

(Civil Complaint)
Western District OF Wisconsin

monthly reviews of each inmate in Ac-
Status. During these reviews, a member of
the psychological Service unit (PSU) evaluates
the inmate, as well as the Segregation review
Committee.

6.6.)   In making their recommendations,
Staff are instructed to document their
decision on whether the inmate should remain
in that Status, and whether they continue to
pose a substantial risk to the safety and
Security of the institution or others.

6.7.)   The Security Director (Kartman) and
Warden (Boughton) then approve or reject
the multi-disciplinary team's recommenda-
tion.

6.8.)   Plaintiff went through this review
of his PACE-placement on a monthly basis
and was successful in his effort to be
promoted to phase Four (4) — "no restraints"
by the multi-disciplinary team in November
of 2018.

(11)

(Civil complaint)

Western District Of Wisconsin

6.9.)    On December 3, 2018, the Security Director, defendant Kartman, approved plaintiff's Phase Four (4) promotion.

6.10.)   On December 4, 2018, the Warden, defendant Boughton, also approved plaintiff's Phase Four (4) promotion.

VII.            Factual Background
                From (WCI).

7.1.)   On February 23, 2015, plaintiff and another prisoner were involved in assaulting each other at Waupun Correctional Institution (WCI), as well as plaintiff assaulted the officer that responded to the incident.

7.2.)   Plaintiff was in possession of a manufactured weapon (made out of a plastic hanger); but never attempted to use it during the fight with the inmate.

7.3.)   On March 9, 2015, plaintiff received

(12)

(Civil Complaint)
Western District OF Wisconsin

disposition: 360 days Disciplinary
Seperation ("D.S"), and Conduct report.

7.4.) Plaintiff received outside changes
and; subsequently placed on A.C status.

7.5.) On August 2, 2016, Plaintiff was
removed From AC status and placed
into general population.

7.6.) Plaintiff requested a early PRC
hearing to go to WSPF general population
For vocational purposes, which was granted.

7.7.) While waiting to be transfered to
WSPF general population, plaintiff
received several adult conduct reports.

7.8.) These adult conduct reports were
issued to plaintiff while he was in
Segregation at WCI and involved threats
to segregation staff; but no assaults.

7.9.) On September 20, 2016 plaintiff
was transfered From WCI to WSPF-

(13)

(Civil complaint)

Western District Of Wisconsin

in Disciplinary Seperation (DS) status, and not in administrative confinement status or tracking.

7.10.) On November 30, 2016 plaintiff was placed on AC-status at WSPF due to the 2015 assaults against the inmate and staff, and the 2016 WCI threats; which he remains since.

7.11.) It should be noted: That on August 2, 2016 plaintiff was removed from AC-status and released to general population at WCI for the 2015 assaults against the inmate and staff member, prior to his transfer to WSPF on September 20, 2016.

VII.    Statement Of Claims-
Denial Of Due Process/Retaliation:

8.1.) On April 3, 2019 plaintiff received written notice of a scheduled Ac hearing for April 10, 2019, defendant Hulce's AC recommendation packet, and notice of his rights at the hearing. DOC-122 form. 308.04(4).

(14)

(Civil Complaint)

In The United States District Court
For The Western District Of Wisconsin

8.2.) The DOC 303.86 RecordKeeping (4) provides: The department may keep conduct reports which have been dismissed or in which the inmate was found not guilty for statisitcal purposes, and security reasons, but the department may not consider them in making program assignment, transfer, or release decisions and the department may not include them in any inmate's record.

8.3.) Plaintiff acknowledged in defendant Huce's AC-recommendation, dated April 1, 2019, the first harmful procedural error among many more.

8.4.) Defendant Huce had included in his AC-recommendation report a Conduct report (#2720899) dated: 11-24-15, which was modified finding Plaintiff Not Guilty of Threats but guilty of Disobeying Orders.

8.5.) Defendant Huce intentionally included the Threats part of the Conduct report, knowing that Plaintiff was found not guilty on, in support of his recommendation instead of only using the Disobeying Orders part of it.

(15)

(Civil Complaint)
Western District Of Wisconsin

8.6.) On April 3, 2019 plaintiff filled
out DOC-73, Inmate's Request For attendance
of witness/evidence Form.

8.7.) Plaintiff requested two unit staff:
Officer Weigle and Officer Gallenger (non-
defendants), in addition to the AC recomm-
ender defendant Juice as witness and
explained the relevance of the witnesses
testimony on DOC-73 Form. Pursuant
to 303.84 Due Process hearing: witnesses.
(1).

8.9.) Plaintiff submitted DOC-73 to the
Security Director, defendant Kartman and
a six-page statement to the ACRC
dated April 4, 2019.

8.10.) DOC 303.84 (2) provides: After
all witness requests have been received, the
Security director shall review them to deter-
mine whether the witnesses posses relevant
information and shall be called.

8.11.) Defendant Broadbent, the ACRC —

(16)

(civil complaint)

Western District Of Wisconsin

hearing officer and ACRC Chairman, not the Security director, defendant Kartman; received, review and then denied plaintiff's three requested witnesses on April 8, 2019.

8.12.) Defendant Broadbent also denied written statements from plaintiff's three requested witnesses on April 8, 2019.

8.13.) DOC 308.04 (4) (e) (4) gives the prisoner on administrative Confinement status the right to present and question witnesses at their AC hearings in accordance with Sub. (7) and the hearing procedures For Major disciplinary offenses.

8.14.) Defendant Broadbent cited DOC 303. 84 (4) (c) For denying both officers as witnesses and DOC 303. 84 (4) (b) For defendant Hulce.

8.15.) DOC 303.84 (4) (c) States: Witnesses requested by the accused who are staff or inmates Shall attend the disciplinary hearing unless one of the Following exists: The testimony is irrelevant to the question of

(17)

(Civil Complaint)
Western District Of Wisconsin

guilt or innocence. [1]

8.16.)  Defendant Broadent's 303.84(4)
(c) citation was not applicable to plaintiff's
request or reason of both officer witnesses.

8.17.)   Their testimony was relevant as to
whether plaintiff was a threat to staff and
inmates, not whether plaintiff was guilty or
innocent as a result of a conduct report issued.

8.18.)   Both requested witnesses were regular
First-Shift (Monday - Friday) officers who worked
on the restrictive housing Unit (RHU) where
plaintiff (Ac inmates) was being housed; in which
he had been working around without restraints
or incidents for over four (4)-months prior to
the April 10, 2019 Ac hearing.

8.19.)   Both witnesses agreed to attend
plaintiff's Ac hearing and or provide a written
statement corroborating plaintiff's defense.

[1]  Doc 303.84(4)(c) is applicable to witnesses requested by
inmates in disciplinary hearings, relating to Major conduct reports
not Ac hearings.

(18)

(Civil Complaint)

Western District OF Wisconsin

8.20.) From December 4, 2018, to April 10, 2019, plaintiff had been without handcuffs around these two staff witnesses and multipal other staff without incident.

8.21.) These two witnesses agreed to attend plaintiff's AC hearing and provide undisputed Facts on behalf OF plaintiff that they Feel and believe that he is not a threat to staff and inmates; evident by all restraints being removed while out of cell.

8.22.) Defendant Broadbent denied defendant Hulce as a witness For the plaintiff because he worked on a different shift. 303.84 (4)(b).

8.23.) DOC 308.04 (7) (b) states: At the review, all OF the following shall occur: All witnesses For or against the inmate, including the inmate and the staff member who recommended the placement, shall have a chance to speak. See also 308.04 (4) (e) (3) and (4).

(19)

(Civil Complaint)
Western District OF Wisconsin

8.24.)   Plaintiff wanted to question
defendant Hulce as to why he is claiming
plaintiff is a threat, when weeks prior
to his AC recommendation dated April 1,
2019; On March 16, 2019 plaintiff
was without any handcuffs/shackles
working around him cleaning the
Segregation Unit-visiting booths and
recreation rooms.

8.25.) Plaintiff also wanted to ask defendant
Hulce why his report-AC recommendation
did not mentioned that in the past six-
months plaintiff had completed a 10-12 week
group-out-of-cell with defendant Schwenn
on January 31, 2019.

8.26.)  The department OF Corrections
Cleary recognizes that prisoner's on
administrative Confinement have a right
to call relevant witnesses at their AC
hearing.

8.27.)  The Supreme Court held in
Wolff v. McDonnell, 418 U.S. at 566.

(20)

( Civil complaint )
Western District OF Wisconsin

prisoners have the right to call witnesses when it is not "unduly hazardous to institutional safety or correctional goals." Witnesses may be denied For reasons such as "irrelevance, lack of necessity, or the hazards presented in individual cases." Id.

8.28.) None of these reasons applied to plaintiff's requested witnesses to attend his AC hearing or provide witness statements.[2]

---

[2] See, e.g., Ayers v. Ryan, 152 F.3d 77, 81 (2d cir. 1998) (due process violation where official failed to obtain testimony From prisoner's requested witnesses and provided no rational explanation); Brooks v. Andolina, 826 F.2d 1266, 1269 (3d cir. 1987) (due process violation where inmate not allowed to call witnesses at disciplinary hearing because officials made no showing of hazard to safety or correctional goals); Pannell v. McBride, 306 F.3d 499, 503 (7th cir. 2002) (per curiam) (due process violation where prisoner denied the opportunity to call witnesses who could have corroborated prisoner's defense because the state provided no reasonable –

(21)

(Civil Complaint)
Western District OF Wisconsin

8.29.) On April 10, 2019 at 9:00-9:15 a.m. a AC hearing was held via video in the Alpha Unit's visiting booth.

8.30.) Plaintiff quickly seen that the ACRC-members consisted oF: Defendants Schwenn, Broadbent, Belz and non-defendant Ms. Monahan, plaintiff's advocate.

8.31.) DeFendant Broadbent read deFendant Huice's AC recommendation report out loud, however, plaintiff's 6 page Statement to the ACRC dated April 4, 2019 was not.

8.32.) AFter, PlaintiFF Objected to having deFendant Dr. Schwenn From PSU being on the Committee, and the denial oF his three witnesses.

8.33.) PlaintiFF Stated to defendants Broadbent and Belz that he Feels and believe deFendant Schwenn could not be Fair and impartial giving the recent events in last 2 weeks.

JustiFication For denial).

(22)

(Civil Complaint)

Western District Of Wisconsin

8.34.)    Plaintiff explained that he Just Filed a grievance against defendant Schwenn, which involved two other staff-non defendants, on April 1, 2019. [3]

8.35.)   In plaintiff's grievance against defendant Schwenn, he alleged that she and two other Staff threat'en to remove him from the Phase 4 PACE-program (Social Skills group) and demote him to phase 3 if he refused to talk to them on March 25, 2019; and if he refused to Seperate his mental health issues from the Social Skills group.

8.36.) This grievance was received and acknowledge by the Institution Complaint Review System ("ICRS") on April 2, 2019. Complaint No. WSPF-2019-6185. See (Exhibits- A—1—6.).

_____

[3]    Plaintiff requested in this grievance that defendant Dr. Schwenn and the other 2 staff, not be allowed to sit on any of his upcoming review hearings, such as plaintiff's administrative Confinement hearing.

(23)

(Civil Complaint)
<u>Western District OF Wisconsin</u>

8.37.)    Defendant Ray was the Complaint Examiner for plaintiff's grievance against defendant Schwenn and dismissed the grievance on April 2, 2019. (Exhibit A-2)

8.38.)    Defendant Boughton was the reviewing authority For the grievance plaintiff filed against defendant Schwenn on April 1, 2019; which he, too, dismissed plaintiff's grievance against defendant Schwenn on April 3, 2019. (Exhibit A-3.)

8.39.)    At all stages of administrative redress defendant Schwenn's official misconduct was backed up by the Correction Complaint Examiner (CCE) and Secretary in Madison. See (Exhibit A-5)

8.40.)    Despite plaintiff's objections, defendant Broadbent refused to excuse defendant Schwenn from the hearing, and defendant Schwenn herself refused to remove herself from the hearing.

8.41.) Doc 308.03 Definitions. (1) States: "Administrative Confinement Review Committee" –

(24)

( civil complaint)

Western District OF Wisconsin

or "ACRC" means the administrative Confinement review committee appointed by the Warden, Consisting of 3 members, one of which shall be from security, one from treatment, and at least one member shall be a supervisor who will serve as the hearing officer.

8.42.) Defendant Boughton was aware of plaintiff's grievance against defendant Schwenn seven days prior to appointing her to the ACRC; and that plaintiff requested that she and the other two staff (non defendants) not sit on any of plaintiff's upcoming review hearings in fear of being retaliated against.

8.43.) However, in a cabal of reprisals defendant Boughton conspired with defendant Schwenn to retaliate on plaintiff by intentionally appointing her to plaintiff's AC hearing; perfecting the next stage of the reprisal to hold the predetermined, mock due process AC hearing, and to find and punish plaintiff for recently filing the grievance against defendant Schwenn on April-

(25)

(Civil Complaint)
Western District Of Wisconsin

1, 2019 and Subsequent appeal grievance against
defendant Boughton to Madison.

8.44.)   Plaintiff's April 10, 2019 AC review
hearing was, the instrument of illegal
punishment and based on an arbitrary Cable
Of defendants-Boughton and Schwenn's retali-
tory and unconstitutional posture; inwhich
defendants Broadbent and Belz in Collusion
or indifference to plaintiff's rights adopted.

8.45.) Defendants: Broadbent, Belz,
Boughton, and Schwenn used plaintiff's
administrative Confinement review hearing
to guise their retalitory Conduct against
plaintiff while creating the facade of
meaningful due process.

8.46.)   Their retalitory Conduct was in
direct violation of DOC policies and procedural
due process Safe guards and in opposition
to the State and Federal Constitutions.[4]

_____

[4] See Gomez v. Randle, 680 F.3d 859, 866 (7th cir.-

(26)

(civil complaint)
Western District OF Wisconsin

8.47.)   Doc 308.04 (8) (a) States: All of
the following shall occur after the review:
The ACRC shall deliberate in private considering
only the evidence presented to it that supports or
refutes the need for administrative confinement
and the inmate's records.

8.48)   Doc 308.04 (8) (b) States: The
ACRC shall decide whether the evidence and
the records support the need for administrative
confinement and, if so, shall order the place-
ment.

8.49.)  On April 10, 2019 at or around 1:00
p.m. plaintiff received a copy of DOC-1875
form, the ACRC's reasons for decision
and evidence relied on.

8.50.)  Plaintiff notice that defendant -

_____

2012). (A prisoner has a first amendment right to
make grievances about prison conditions). Retaliation
against a prisoner for his use of the administrative
complaint system may give rise to a valid cause of action
under § 1983. See Black v. Lane, 22 F.3d 1395, 1401 (7th cir. 1994).

(27)

(civil Complaint)
Western District OF Wisconsin

Schwenn Further Consipired to retaliate with defendants Broadbent and Belz against plaintiff by perfecting the next stage of the reprisal, and in Futherance of the Cabal, Unanimously Finding Continue AC was necessary as there exists reasonable grounds to believe that plaintiff presents a substantial risk of Serious physical harm to both Staff and inmates. Citing DOC Administrative Rule 308.04 (2) (a) and (b).

8.51.)   The ACRC-defendants perfected the reprisal punishment of another Six-months on administrative Confinement Status, in addition to the time plaintiff already Spent on administrative Confinement Status prior to the April 10, 2019 AC-hearing; Over 3 1/2 years.[5]

8.52.)   Plaintiff argues that he was Kept in administrative Confinement as a retaliatory action For invoking his Constitutional right to use the prison grievance procedures. Williams V. Snyder, 150 Fed. Appx. 549 (7th cir. 2005).

(28)

(Civil Complaint)

<u>Western District OF Wisconsin</u>

8.53.)   The ACRC-defendants relied on the following evidence in finding AC necessary: The statement in defendant's Hulce 'Ac- recommendation report dated April 1, 2019; and physical evidence – plaintiff's conduct record while in the department of Corrections.

8.54.)   The ACRC-defendants also considered and utilize Conduct report # 2720899 dated November 24, 2015 that was modified finding plaintiff not guilty of threats only disobeying orders, along with the 2015 assault against staff.

8.55.)   Keeping a prisoner in administrative confinement status based on misconduct charge of which [s]he has been cleared denies due process. Childs v. Pellegrin, 822 F.2d 1382, 1388 (6th Cir. 1988).

---

5   Periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions. Marion v. Columbia Correctional Institution, 559 F.3d 693, 699 (7th cir. 2009).

(29)

(Civil Complaint)
Western District OF Wisconsin

8.56.) Doc 308.04 (10) provides: An inmate's progress in AC shall be reviewed by the ACRC at least every 6 months.

8.57.) The ACRC-defendants intentionally disregarded and or ignored plaintiff's positive progression in the past six months, facts, relevant records and current level of risk before them that provided irrefutable proof that plaintiff was not a threat and that continued AC was not necessary or met the criteria outlined in DOC Administrative Rule 308.04 (2) (a) and (b).

8.58.) Absent plaintiff's grievance against defendant Schwenn and appeal grievance against defendant Boughton on April 1, 2019 and April 3, 2019; the ACRC would have released plaintiff to general population as the records, facts and progress by plaintiff did not meet the 308.04 (2) (a) and (b) criteria.

8.59.) Administrative confinement must be meaningful; due process is not satisfied by perfunctory review and rote reiteration of-

(30)

(Civil Complaint)

Western District Of Wisconsin

State Justifications. Sourbeer v. Robinson, 791 F.2d 1094, 1101 (3d Cir. 1986); McClary v. Kelly, 87 F.Supp. 2d 205, 214 (W.D.N.Y. 2000) (stating that review must be "meaningful" and not a "Sham or Fraud", upholding damage verdict for Sham review), aff'd, 237 F.3d 185 (2d Cir. 2001); Smart v. Goord, 441 F.Supp. 2d 631, 642 (S.D. N.Y. 2006) (allegation that review hearings were a "hollow Formality" and officials did not actually consider releasing plaintiff stated a due process claim).

8.60.) The DOC 308.04 and DOC 308.03 (1) requires a ACRC review every six months to access the AC-prisoner's threat level, security threat levels, and if it does not exist, then release from administrative Confinement -(AC) must ensue.

8.61.) Plaintiff's Continued AC-status was based on both retaliation and on the "rote reiteration of stale Justifications", which the Courts have Condemned. (F. Wolff v. McDonnell, 418 U.S. 539, 565, 94 S.Ct. 2963 (1974).

(31)

(Civil Complaint)
Western District OF Wisconsin

8.62.)   Defendant Hulce's Ac-recomm-
endation dated April 1, 2019, provided no
new or current indications that plaintiff
was a threat to staff and inmates if
released to general population at WSPF.

8.63.) His report was incomplete,
inaccurate and based on Stale Justifications:
incidents from plaintiff's prior prison—
Waupun Correctional Institution—WCI
From 2015 and 2016 prior to his transfer
to WSPF on September 20, 2016.

8.64.)   Two months prior to plaintiff's
April 10, 2019 Ac-hearing, he completed
Successful a 10-12-week group program out-
of-cell on January 31, 2019 called:
Positive psychology with defendant Schwenn;
in which defendant Hulce failed to mention
in his Ac-recommendation report.

8.65.) Plaintiff also successfully completed
multipal other programs listed in defendant'
Hulce's Ac-recommendation in the past six
months.

(32)

(Civil complaint)
Western District OF Wisconsin

8.63.) Plaintiff was currently enrolled in PACE's phase 4-social skills out-of-cell group with five other inmates.

8.64.) In November of 2018, Unit staff, unit manager recommended for plaintiff to be promoted to PACE's phase 4; which the Security director-defendant Kartman and the Warden-defendant Boughton both approved on December 4, 2018.

8.65.) On December 4, 2018, both the Security director and warden approved for plaintiff to start coming out his cell without restraints (handcuffs and shackles), and be escorted by one officer.

8.66.) So from a Security standpoint, unit staff, defendant Kartman and Boughton felt and believed that plaintiff didn't pose a substantial risk or threat to staff and inmates or the integrity of the environment; Otherwise they would have never allowed Plaintiff out his cell without restraints around multiple staff/inmates on a daily

(33)

basis, For over Four (4) months.

8.67.) Futhermore, the Security director and the warden would have never put their Staff in harms way. Any Security Concerns would've provided Security Staff a rational basis For actions to keep plaintiff in Full restraints whenever he left his Cell.[6]

8.68.) The ACRC-defendants was aware that plaintiff had been Coming out his cell without any restraints on around Staff and inmates From December 4, 2018 to April 10, 2019 and Subsequently; over Four-months prior to plaintiff's AC-hearing.

8.69.) Plaintiff's Statement to the ACRC-defendants at his April 10, 2019 hearing was that: "he has been coming out of his cell without restraints around Staff and inmates For over 4-months -

[6] Prisoners on phases 1-3 are in Full restraints when they leave their Cells For Security purposes.

(Civil complaint)
Western District Of Wisconsin

to work, for meals, and to clean the RHU's recreation rooms, and feels he is not a threat to staff, inmates."

8.70.) Furthermore, plaintiff pointed out to defendant Broadbent that he infact had worked around both ACRC defendants Schroen and Belz without any restraints or incidents prior to his April 10, 2019 AC hearing; and that defendant Belz himself just weeks and even days prior to plaintiff's hearing, escorted him to the dining room for meals and recreation without any restraints on.

8.71.) That is the Antithesis of a physical threat to staff, inmates and the integrity of the institution (WSPF).

8.72.) In addition, plaintiff had never assaulted or threaten any staff or inmates at WSPF since his arrival on September 20, 2016, Nor has he received any conduct reports at WSPF for such behavior/actions.[7]

(35)

(Civil Complaint)
Western District Of Wisconsin

8.73.) On April 10, 2019, Plaintiff appealed the ACRC's retaliatory and predetermined hearing-decision to the warden on DOC-1881 form.

8.74.) Plaintiff pointed out the many objections presented at the hearing and the reprisal nature of the events in a 4-page appeal letter.

8.75.) The warden, defendant Boughton, in collusion and indifference to plaintiff's rights, affirmed the ACRC-defendants' official misconduct on April 15, 2019 and May 31, 2019.

8.76.) Plaintiff alleges that the ACRC appeal process to defendant Boughton was a sham process because he initially conspired with defendant Schwenn to orchestrate the mock and retaliatory AC-hearing by appointing her to sit on the ACRC to find AC necessary; knowing plaintiff would have to appeal the ACRC's decision to him.

_____

[7] Plaintiff's last conduct reports were from March 3, 2017; none involving assault or threats.

(36)

(Civil Complaint)
Western District OF Wisconsin

8.77.)   This allowed defendant Boughton to perfect the final stage OF the reprisal by affirming the ACRC's decision while putting forth Fraudulent reasons, that were clearly arbitrary, to continue plaintiff's confinement on AC for another six-months; essentially denying plaintiff to a meaningful due process AC appeal.

8.78.)   Although prisoners do not have a Constitutional right to remain in general population, see e.g., Sandin v. Conner, 515 u.s. 472, 480, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Plaintiff did have a State-created liberty interest in avoiding segregation, or in not being kept there For long periods without meaningful due process. Ashcroft v. Iqbal, ___ u.s. ___, 129 S.Ct. 1937 (2009).

8.79.)   Defendant Boughton's reasons for retaining plaintiff was: Conduct History warrants placement-DOC-1881; and Inmate's pattern of violent conduct to include assault on an inmate and threats to physically assault

(37)

(Civil Complaint)
Western District OF Wisconsin

Staff Warrants continued placement in Ac.
Release to general population status would pose
a significant risk to others. DOC-1882.

8.80.)    As the Warden-defendant
Boughton acknowledged that plaintiff was
on phase 4 of PICE on DOC-1882, this
Fact provided him with the very evidence
that plaintiff was not a risk or threat to
others. Thus rebutting his reasons for retaining.

8.81.)  As stated previously herein, defendant
Boughton knew that plaintiff was coming
out his cell around staff and others without
restraints - one person escort, without incident
For over Four-months prior to plaintiff's
April 10, 2019 Ac hearing and at the time
he appealed the Acrc's decision to him.

8.82.)  Defendant Boughton approved
plaintiff to come out-of-cell without
restraints on December 4, 2018 around others
because he believed and felt that plaintiff
did not pose a significant risk to others;
but claimed later in his reason For retaining -

(38)

(Civil Complaint)

Western District Of Wisconsin

Plaintiff on AC that he was a threat to Others, while continuing to approve plaintiff to walk around the Segregation Unit around Others without handcuffs and Shackles.

8.83.)    Futhermore, defendant Boughton was aware that plaintiff has never been in general population at WSPF Since his arrival on September 20, 2016; and has never assaulted or threat'en any inmates or Staff at WSPF.

8.84.)     Defendant Boughton Knew that plaintiff's assault against the Inmate took place at Waupun Correctional Institution (WCI) in February of 2015, inwhich plaintiff was removed from AC For on August 2, 2016; and Knew that all of plaintiff's threats towards Staff was issued at WCI while in segregation in 2016, and not at WSPF.

8.85.) The Supreme Court Said, due process requires only "an informal nonadversary review

(39)

(Civil Complaint)

Western District OF Wisconsin

of the information supporting [the prisoner's] administrative Confinement." Hewitt, 459 U.S. at 472; accord, Wilkinson, 545 U.S. at 229.

8.86.) Defendant Boughton's reasons are reiterations of stale justifications and did not justify continued Confinement on AC, as he failed to put forth any new or current evidence/indication(s) that plaintiff was a physical threat to staff and inmates at WSPF.[8]

8.87.) On April 22, 2019, the DAI administrator, defendant Schwochert, made the decision to retain plaintiff on AC.

8.88.) Reasons for decision: Inmate needs to complete his programming and remains a significant risk to others in general population. DOC-1882 Form.

8.89.) Like the ACRC-defendants and defendant Boughton, defendant Schwochert -

---

[8] Defendant Boughton violated the Eighth Amendment's prohibition against cruel and unusual punishment by keeping plaintiff on AC.

(40.)

(Civil Complaint)
Western District OF Wisconsin

was aware that plaintiff had been coming
out-of-cell without any restraints on around
multiple staff and inmates to work, go to
meals, recreation without incident For over
4-months.

8.90.)   Therefore, he had evidence that
Plaintiff did not pose a significant or
 Substantial risk to staff or inmates as
he claimed in his reasons for decision. Doc
1882.

8.91.)   Further, Wisconsin Administrative
Code DOC § 308.04 is the administrative
policy that governs Administrative Confinement.

8.92.)   NO where therein do It requires
a prisoner that has been placed on Ac-
status to enroll and complete the PACE-
program in order to be released From AC.

8.93.)   IF defendant Schueocheret's
Justification is accepted, it will make
administrative Confinement DOC 308.04
 Six-month-reviews a "Sham" and predetermined-

(41)

(Civil Complaint)

Western District OF Wisconsin

review process if that the ACRC, warden
and administrator's' decisions is For Ac-
prisoners, like plaintiff, to complete programs
— PACE ; which has no legitimacy or
recognition in the DOC code 308.04 to
begin with.

8.94.) Futhermore, defendant Schwochert's
program Justification has no safe guards
or appellate due process rights which can only
mean that prison officials can subject Ac-
prisoners to long term indefinite solitary /
administrative confinement, punitive and
atypical significant hardships as it relates
to the ordinary incidents of prison life.[9]

8.95.) In any event, plaintiff had
completed up to Eighth programs prior
to his Ac-hearing on April 10, 2019 and
prior to defendant Schwochert's decision
to retain plaintiff on administrative
confinement status For another 6-months.

---

[9] See Sandin v. Conner, 515 U.S. 472, 484, 115 S.ct.
2293 (1995).

(42)

(Civil Complaint)

## Western District OF Wisconsin

8.96.) Plaintiff asserts that defendant Schwochert's decision to retain him on AC-Status violated his Eighth Amendment right to be free from cruel and unusual punishment.

8.97.) Doc 308.04 (11)(C) states in part; The decision of the warden and administrator is Final except that the inmate may challenge any procedural [errors] through the inmate Complaint review system under Ch. DOC 310.

IX.     Complaint to the Institution Complaint Examiner (ICE)

9.1.) The ICE is a staff person at the prison. The ICE is supposed to collect complaints, assign a File number to each complaint, then review and acknowledge each complaint within 5 working days of receiving it. § Doc 310.11 (2).

9.2.) Plaintiff filed a Complaint to the ICE pointing out the AC hearing procedural –

(43)

(Civil Complaint)
Western District OF Wisconsin

errors, due process deprivations and Constitutional violations and retaliation.

9.3.)   The Inmate Complaint Review System (ICRS) received and acknowledged plaintiff's Complaint on April 30, 2019. Complaint # WSPF-2019-7922. (Exh. B-7.)

9.4.)  On April 30, 2019, defendant Ray-ICE recommended plaintiff's Complaint be dismissed. (Exh. B-8.)

9.5.)  Reason: This examiner has reviewed the administrative Confinement hearing packet. No procedural errors have been noted. Id.

9.6.)  Defendant Ray reviewed only the same AC-recommendation packet that the ACRC reviewed and relied on. She never investigated into plaintiff's alleged procedural errors, due process violation or retaliation claims, by her own admission.

Defendant Ray never reviewed-

(44)

(Civil Complaint)

Western District Of Wisconsin

Chapter DOC 308 Administrative Confinement Policy or DOC 303-Handbook regarding plaintiff's rights at a AC-hearing: Witnesses, documentary evidence, procedural process, etc....

9.7.)   She never reviewed plaintiff's request for attendance of witness/evidence DOC-73 Form to ascertain the reason he requested the three witnesses — relevant testimony, or to see if defendant Broadbent's citation of the 303. In support of his reasons to deny all three witnesses were applicable or not.

9.8.)   She never reviewed plaintiff's complaint he filed on April 2, 2019 against defendant Schwenn and non-defendants, Hoem and Kroening to understand why their was a legitimate conflict of intrest having her on the ACRC for plaintiff's April 10, 2019 AC hearing.

9.9.)   She never reviewed other relevant documents: DOC-1875, 1881 and 1882 forms. Simply put, defendant Ray-

(45)

(civil complaint)

## Western District OF Wisconsin

failed to investigate into plaintiff's claims, evident
by her own admission and recommendation.


X.     Appeal to the "Appropriate Reviewing
                Authority (ARA).

10.1.) Under the Administrative Code, the
term "Appropriate Reviewing Authority" (ARA)
refers to the warden, bureau director, adminis-
trator, or any other person who is authorized
to review and decide an inmate complaint. §
DOC 310.03 (2).

10.2.)   If the ARA does make a decision
on the complaint, he or she can affirm the
complaint; dismiss the complaint; or affirm
or dismiss the complaint with modifications.
§ DOC 310.12 (2).

10.3.) Defendant Jaeger was the
ARA and dismissed plaintiff's AC-hearing
procedural errors complaint on May 8, 2019.
Reason: NO procedural errors evident. See
(Exh. B—9.).

(46)

( Civil Complaint)

Western District OF Wisconsin

Appeal to the Corrections Complaint
XI.        Examiner ( C.C.E).

11.1.) Plaintiff appealed defendants Ray and
Jaeger's decisions to the C.C.E and DOC
Secretary in Madison, Wisconsin. His
appeal was received and acknowledged by
their office on May 13, 2019. (Exh. B-10)

11.2.)  The CCE is a DOC employee who
does not work in the Division of Adult Instit-
utions (the DOC administrative unit that is
responsible for the prisons). § Doc. 310.03(5).

11.3.) The CCE can use any necessary
investigatory method in order to make a
recommendation about the appeal. § DOC
310.13 (5).

11.4.)  Along with the recommendation,
the CCE will send the complaint File to
the Secretary, so that the Secretary can
make his or her decision on the appeal.
§ DOC 310.13 (6).

( 47 )

(Civil Complaint)
Western District Of Wisconsin

11.5.) On May 14, 2019 the CCE-defendant Hompe recommended plaintiff's complaint be returned for prioritized investigation - address each specific alleged procedural error. (Exh. B—11.)


XII.    Decision Of the DOC Secretary.

12.1.) The DOC Secretary has three choices on appeal. The Secretary can: Accept the recommendation of the CCE and adopt it as the decision; Adopt the recommendation of the CCE with modifications; Reject the recommendation of the CCE and make a different decision on the appeal; or Return the appeal to the CCE for additional investigation. § DOC 310.14 (2).


12.2.) On May 17, 2019, the secretary, defendant O'Donnell adopted the CCE's recommendation - return for prioritized investigation. The Secretary is returning this complaint record to the Institution for

(48)

(Civil Complaint)

Western District OF Wisconsin

priority Investigation. (Exh. B—12.)

XIII.   Plaintiff's Request To The
            CCE and Secretary.

13.1.) Plaintiff sent the CCE and DOC
Secretary a correspondence in May of 2019,
requesting they themselves or someone from
their Office Conduct the prioritized Investi-
gation into his procedural Claims; and not
the prison's Inmate Complaint Review System
(ICRS). They responded. See (Exh. B—13.)

13.2.) Plaintiff explained to them that
he believe since the ICRS already determined
that there were no procedural errors noted
and Failed to Conduct a investigation into
his procedural claims initially, that the
ICRS-department Could not Conduct a
Fair and legitimate prioritized investigation.

13.3.) Futhermore, that they might use
the opportunity to retaliate or prejudice
the plaintiff by Claiming they conducted-

(49)

(Civil Complaint)
## Western District OF Wisconsin

an investigation into his procedural claims when they never did.[10]

13.4.)   On June 4, 2019 defendant Hompe recommended the complaint be dismissed. Reason: In agreement with the ICE assessment of the alleged procedural errors and ARA decisions.

13.5.) On June 28, 2019 defendant O'Donnell rubberstamped the CCE's decision to dismiss plaintiff's complaint. See (Exhibits. B—14,15,16.)

13.6.)   These two defendants, after being informed of the violations through plaintiff's grievance appeals, failed to remedy the wrong when they had the authority to correct it, and exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occuring.[11]

---

[10]     Defendants Hompe and O'Donnell never mentioned who in the ICRS conducted the prioritized investigation, who was contacted and evidence/records relied on.

(50)

(Civil Complaint)

Western District Of Wisconsin

XIV.            Equal Protection

14.1     The Fourteenth Amendment Forbids a state to "deny any person within its Jurisdiction the equal protection of the laws". United States Constitution., Amendment XIV. That means "that all persons similarly situated should be treated alike". City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249 (1985).

14.2.)    Defendants: Broadbent, Boughton and Schwochert, required the plaintiff to participate in and complete PACE - phase 4 social skills group to even be considered for release to general population.

14.3.)    These same defendants did not require several AC-PACE inmates, whom they released on phase 1-3 (lowest phases in PACE), between December 2018 through April 2019 to participate in or complete PACE - phase 4 transitional group in order to be released to general population.

(51)

(Civil Complaint)
Western District OF Wisconsin

14.4.)      There are no procedural safe-
guards in place related to the PACE-programs.
PACE has no legitimacy or recognition in the
DOC code 308.04 to begin with; and as
previously stated, no where therein DOC 308.04
policy do it require prisoners on AC enroll in
and complete the PACE program in order to
be released from AC.

14.5.)   Which means that if AC inmates
in PACE programs don't complete their programs
by their next scheduled six-month AC-hearing
review; the ACRC, warden and administrator
will not released them to general population
until they complete their programs; which
clearly shows that the AC-hearings are
predetermined and a sham review process.

14.6.)      All AC-inmates at WSPF,
regardless of their phase status within
the PACE program, are under the custody
of the state of Wisconsin and control
of the Department of Correction-WSPF
prison as the result of their criminal
behavior on the streets and illicit activities

(52)

(Civil Complaint)
Western District Of Wisconsin

in the prison's general population. Thus,
all are subject to the same general
departmental regulations, policies and equal
protection of the laws.

14.7.)      The AC-PACE inmates that
were released were similarly situated to
plaintiff as they were on AC status, and
in PACE - program in the restrictive housing
unit (RHU- also known as segregation) at WSPF.

14.8.)      Some of the inmates on AC-
PACE, the defendants released from
AC, received Major Conduct reports within
the six-months prior to their AC-hearings
/ release; refused to do programs, and had
multipal phase demotions.

14.9.)      The AC inmates plaintiff
is referring to were on PACE's lowest
phases - 1~3, had been in WSPF's general
population before prior to their AC place-
ment; whereas, plaintiff has never been in
WSPF prison's general population or
committee a offense that met one of the

(53)

(Civil Complaint)
Western District Of Wisconsin
Criterias For administrative Confinement
placement. Doc 308.04.

14.10.)        None of the PACE Phase 1-3
Ac Inmates were Coming out their cells in
the RHU without restraints to prove that
they were not a threat to staff or Inmates
prior to their release to general population (G.P.)
by the defendants.

14.11.) Whereas, plaintiff was Coming
out his segregation cell to work, go to meals,
and recreation with other Inmates without
restraints and without incidents (assaults or
threats) From December 2018 up to the
day of his April 10, 2019 Ac hearing ";
and Subsequently.

14.12.)   Some of the Ac-PACE Inmates
the defendants released to G.P. raised
security Concerns to staff and inmates.

14.13.) For example, in the case of Ac-
PACE Inmate, Maynard Carson # 297356,
he was placed in segregation in 2018 for

(.54)

(Civil Complaint)
Western District Of Wisconsin

touching a Female Chef buttocks while
working in the prison's Food Service depart-
ment at WSPF.

14.14.)  He received a Major conduct
report, disposition - 360 disciplinary seperation
(DS); an outside Charge--additional prison
time; and placed on administrative Confine-
ment Status and enrolled into PACE program.

14.15.)  I Inmate Carson received multipal
behavior log entries For Sexual Conduct,
and never made it to phase 4 or was
Coming out-of-cell without restraints around
Staff, but the defendants released him
at his Ac hearing to general population
only serving under a year on Ac status
For his 2018 Committed Offense against
Staff at WSPF.

14.16.)  None of the Ac-PACE inmates
on phases 1-3 that were released to G.P.
were Filing lawsuits and or grievances
against multipal WSPF officials Challenging
administration prior to defendants releasing

(55)

(Civil Complaint)

Western District Of Wisconsin

them; like the plaintiff was prior to
his April 10, 2019 Ac-hearing.

14.17.) Defendants Broadbent, Boughton
and Schwocert intentionally treated plaintiff
differently at his AC hearing from those
similary situated Ac-PACE inmates at their
Ac hearings. There was no legitimate
rational basis for the difference in treatment
, defendants were motivated by an improper
purpose.

14.18.) Plaintiff was not afforded
equal protection of the laws, like those
similary situated; even though plaintiff's
conduct and program progression showed he
was taking steps for change, along with
his low security classification status
(no restraints)-showing he was not a threat
to staff and inmates was better than
the Ac-PACE inmates the defendants
allowed back out to general population
status between December 2018 through
April 10, 2019.

(56)

Civil Complaint?)

Western District OF Wisconsin

14.19.) There is meaningful Comparison For equal protection purposes between these sets of inmates who were released and Similiarly Situated, enough that the equal protection clause is applicable and that the "rational basis" test Should apply here. See, e.g., Gwinn v. Awmiller, 354 F.3d 1211, 1228-29 (10th cir. 2004).

14.20.) Under current law, a prisoner need not be a member of a group or class that is discriminated against in order to State an equal protection claim. The Supreme Court has held that an individual who claims he has been treated differently from others Similiarly Situated, intentionally and without rational basis, states an equal protection claim as a "Class of one". Village of Willowbrook v. Olech, 528 U.S. 562, 564-65, 120 S.Ct. 1073 (2000).

14.21.) "Class of one" equal protection claims are evaluated under the rational basis test. Borzych v. Frank, 340 F. Supp 2d 955, 970 (W.D.Wis. 2004)."

(57)

(Civil Complaint)

Western District OF Wisconsin

XV.    Deliberate Indifference

15.1.) The Court OF Appeals For the Seventh Circuit has held that "Prolonged Confinement in administrative segregation may constitute a violation of the Eighth Amendment . . . . depending on the duration and nature of the segregation and whether there were feasible alternatives to that confinement." Rice ex rel. Rice v. Correctional Med. Servs., 675 F.3d 650, 669 (7th Cir. 2012).

15.2.)    Such risks include the possibility that prisoners will suffer a mental health breakdown, engage in self-harm or commit suicide. Cavalieri v. Shepard, 321 F.3d 616, 620 (7th Cir. 2003).

"    Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985) (Director of Corrections held liable For his knowledge Failure to remedy improper segregation of prisoner); King v. Higgins, 702 F.2d 18, 21 (1st Cir 1983); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir 1995).

(58)

(Civil Complaint)

Western District Of Wisconsin

15.3.)     Defendant Schoenn's responsibilities at WSPF-prison as a Licensed Psychologist included: performing mental health screening; conducting brief individual counseling; mental health monitoring; providing crisis intervention and prevention; and providing individual psycho-therapy and psychological assessments to inmates needing mental health services.

15.4.)    Defendant Simcox's responsibilities at WSPF-prison as the Psychologist Supervisor included: being responsible for the development, administration, and coordination of all Clinical programs. Supervision of psychological staff; provides direct services to inmates; provides consultation to institution administration and staff; provides Clinical and behavioral training; administers Clinical programs to provide support services and ensure compliance with State and Federal guidlines and program standards.

15.5.)    As a result of having Ac continued for another six-months, time already spent in Administrative Confinement Status –

(59)

(Civil Complaint)

Western District OF Wisconsin

prior to his AC-hearing, the AC-Conditions of Confinement, and defendant Schwenn's initial threats - deliberate indifference; Plaintiff [12] was prescribed a Anti-depressant medication (Escitalopram) by the prison's psychiatrist.

15.6.) The purpose of this medication was to help combat the long term administrative Confinement affects and internal issues plaintiff was dealing with on a daily basis: stress; depression; sleep deprivation; mental anguish, Coupled with his existing diagnosis.

15.7.) Plaintiff's diagnosis: 1.) Posttraumatic stress disorder with nightmare disorder; 2) Antisocial personality disorder; and 3) Chronic pain. Plaintiff was also prescribed (Trazadone) for sleep.

15.8.) By the time plaintiff's AC-hearing was held on April 10, 2019, Plaintiff

---

[12] Plaintiff requested to first see the psychiatrist for anti-depressants was March 25, 28, 31, 2019 via PSR/HSR-DOC 3035 due to defendant Schwenn's threats.

(60)

(CIVIL COMPLAINT)

Western District OF Wisconsin

Still hadn't seen the psychiatrist from his first requests in March 2019.

15.9.)    After his Ac-hearing, plaintiff submitted a Health Service Request (HSR) to the psychiatrist dated April 24, 2019 requesting anti depressants and complaing of internal issues. A Registered Nurse (RN) responded on April 25, 2019: 'will check on appointment'; and eventally plaintiff seen the psychiatrist and prescribed anti-depressant medication.

15.10.) On June 4, 2019, plaintiff submitted another HSR to see the psychiatrist, requesting a higher milligram (MG), and complaing that administrative Confinement, PACE, and retaliation were affecting him resulting in plaintiff experiencing sleep deprivation and stress.

15.11.) Also on June 4, 2019, plaintiff submitted a Psychological Service Request (PSR) to the Psychological Service Unit (PSU) Supervisor, defendant Simcox.

15.12.) In the PSR, plaintiff informed

(61)

(Civil Complaint)

Western District OF Wisconsin

defendant Simcox that being on AC was
really getting to him, along with dealing
with the PACE-program, the retalitory
decisions and actions by defendant Schwenn
and other WSPF-officials. Plaintiff also
complained of internal issues: Sleep deprivation,
depression and stress.

15.13.) On June 6, 2019, defendant Simcox
responded to plaintiff's June 4, 2019 PSR:
"I see from your record you are scheduled
to be seen in September[13]. I consulted
with Dr. Schwenn and she offered to see
you in the very near future to offer you
help with stress and/or insomnia. PACE
and other programs are aimed at helping you to
move past AC."

15.14.) This ment that plaintiff was
going to have to wait about two months to
see a psu staff - Dr. Schwenn. Infact, no
psu staff (defendant Schwenn) came to hold
a face to face consultation at cell-front
with the plaintiff about how AC, etc...
was affecting him or about his internal

(62)

(Civil Complaint)
Western District OF Wisconsin

issues he was experiencing. [13]

15.15.) Psu staff share the responsiblity
OF Conducting rounds For inmates in WSPF's
restrictive housing, including inmates in A.C.
During rounds, Psu staff stop and Check in
with each prisoner to ask if they have mental
health Concerns or need to speak with Someone,
and to provide written materials For Cognitive
Stimulation.

15.16.) On June 9, 2019, plaintiff
Filed a Complaint to the I C RS against
defendants Schwenn and Simcox alleging Psu
Staff has not Seen him. See Exhibits C —
17 — 23.

15.17.) The I CRS received and acknowledged
plaintiff's Complaint on June 12, 2019. Id. at
C — 17.

---

[13] Defendant Schwenn was plaintiff's primary Clinical
Staff. Plaintiff was one of the patients on defendant
Schwenn's case load in 2018 and 2019. Prior to being
assigned to defendant Schwenn's Case load, plaintiff —

(63)

(Civil Complaint)
Western District OF Wisconsin

15.18.) Later that day on 6-12-19, unit sgt. called plaintiff over his intercom and ask if he wanted to talk to psu staff and plaintiff responded "yes, but requested a couple minutes as he was using the bathroom". However, psu staff never seen him.

15.19.) Defendant Schwenn lied stating that plaintiff stated no! when ask if he wanted to speak to psu staff.

15.20.) In any event, It was only plaintiff's grievance to the ICRS on 6-12-19 against defendants Schwenn and Stancox that promted her to attempt to speak with plaintiff as well as lie and stat he never wanted to speak with her.

15.21.) Plaintiff asserts that the only inference that reasonably can be drawn from the records is that staff in the ICRS contacted the PSU department informing defendant Schwenn and Stancox +

was assigned to Ms. Lemieux- MS, LPC at WSPF.

(64)

(Civil Complaint)
Western District OF Wisconsin

of plaintiff's grievance against them.

15.22.) Futhermore, had it not been for filling the grievance, defendant Schwenn would have not attempted to speak with plaintiff about his Ac issues.

15.23.) On 6-12-19, plaintiff submitted a PSR to defendant Simcox informing him that he did wanted to speak to PSU staff, still wanted to speak to PSU staff other than defendant Schwenn, non-defendants: Mink and Hoem[14]-PSU staffs; due to a conflict of intrest. Plaintiff also asked defendant Simcox why he waited until he filed a complaint against them then they tried to come talk to him.

15.24.) Plaintiff also requested to speak to his previous clinican, Ms. Lemieux or Simcox regarding his depression, stress, etc.. but he never did.

_____

[14]    Dr. Hoem-non defendant was one of three staff that made threats against plaintiff on 3-25-19.

(65)

(Civil Complaint)
Western District OF Wisconsin

15.25.) On June 13, 2019, defendant
Simcox responded: "NO Inmates at WSPF are
allowed to select PSU providers. You have
the Choice OF Whether or not to work
with the provider assigned to you".

15.26.) Later that day, plaintiff
Submitted a PSR to defendant Simcox
requesting to speak to him or PSU staff
, Ms. Lemieux instead of defendant Schwenn,
or Mink and Hoem.

15.27.) On June 17, 2019, defendant
Simcox responded: " None of the staff
You mentioned report a Conflict about
Seeing You. Records indicates you have
declined PSU contact".

15.28.) Later that day, Plaintiff Submitted
a PSR to Defendant Simcox informing him he
has not declined PSU contact; PSU staff sneaks
through down the range-not announcing themselves
or knocking on Cell door asking inmates about
mental health issues; that PSU staff Mink,
Hoem and defendant Schwenn are the PSU

(66)

(Civil Complaint)
Western District Of Wisconsin

Staff helping keep him on Ac status; and
that he has filed lawsuits, John Does and
grievances against them; thus would like to
speak to a psu staff who he hasen't against.

15.29.) On June 18, 2019, defendant simcox
responded: " You should see psu document their
efforts to provide services for you. Psu will
continue such efforts in accordance with
DOC policy and your assigned care level.
Inmate lawsuits and complaints are not
uncommon, and generally do not impact the
assigned psu provider."

15.30.) It should be noted that plaintiff
was seen by the prison's (WSPF) psychiatrist
on June 15, 2019, and prescribed a higher
milligram anti-depressant (Escitalopram-
20 MG).

15.31.) On July 1, 2019, plaintiff submitted
a PSR to Defendant Simcox informing him
again that Ac has been affecting him
psychologically, emotionally, and physically even
though he takes Trazadone for sleep due to -

(67)

(Civil Complaint)

Western District OF Wisconsin

nightmares, Still having trouble Sleeping as a
result of being on AC status; and that he
is taking Anti-depressants as a result of Ac
affecting him: Depression, and felt like the
medication was not working For him.

15.32.) On July 3, 2019, defendant
Schwenn, not defendant Simcox, responded:
" Please Contact the health Service Unit (HSU)
by submitting a Blue-slip For all issues about
medication".

15.33.) Plaintiff is being Compeled to seek
and request mental health treatment From the
Same PSU staffs (Schwenn, Hoem and Mink) that
was/is the proximate Causes of his internal
issues, mental health issues, and Continued Ac-
Status.

15.34.) Futhermore, defendants Schwenn
and Simcox were Subjectively aware of
plaintiff's very long history of attempting
Suicide, Self harm, threats of self-
harm and Other Suicidal ideations while at USPF-

(68)

(Civil Complaint)
Western District OF Wisconsin

On and OFF Clinical Observation Status.[15]

15.35.)   Therefore, defendants Schueun
and Simcox did not have a legitimate basis to
believe that plaintiff's mental health needs
were not genuine or sincere or required some
form of treatment, especially knowing and
recognizing the serious consequences of prolonged
Segregation in administrative Confinement.

15.36.)   The evidence and records show
that the PSU defendants were deliberately
indifferent to plaintiff's request and
serious mental health and medical
needs. In Sum, defendants Schueun and
Simcox did not exercised their professional
Judgment in a logical Fashion, taking into
account all of the information available
to them at all times relevant. See Campbell
v. Kallas, ___ F.3d ___, 2019 WL 3886912
at *7 (7th Cir. Aug. 19, 2019).

_____

[15]   In 2017 Plaintiff Spent almost three months
on Clinical Observation Status at WSPF, and attempted
Suicide and Self-harm while in that Status.

(69)

(Civil Complaint)

Western District OF Wisconsin

15.37.) There is indication that both PSU-defendants disregarded a substantial risk that plaintiff would suffer a mental breakdown or attempt self-harm or suicide. Cavalieri V. Shepard, 321 F.3d 616, 620 (7th Cir. 2003).

XVI.   Conditions OF Administrative Confinement Status.

16.1.) Plaintiff request this Court adopt and endorse the idea that Conditions of administrative Confinement Status at WSPF are punitive, Which in theory are not supposed to be punitive, but mirrors punitive Segregation Status- also known as disciplinary seperation (DS); and not general population Status.

16.2.) The difference between punitive Segregation and administrative Confinement Status is: "punitive Segregation" is meant to discipline inmates for breaking the rules and "Administrative Confinement" is intented to prevent prisoners, who committed offenses in (GP) from-

(70)

(civil complaint)

Western District Of Wisconsin

Committing Future misconduct or threating Security.

16.3.)  It is obvious that being housed in segregation (like plaintiff), in a tiny cell For 23 hours a day For over several years results in serious deprivations of basic human needs, such as sleep and environmental stimulation; and creates atypical and signisicant conditions requiring due process protections that violate the Eighth Amendment.

16.4.)  The Seventh Circuit held in Wagner v. Hanks, that segregated confine-ment is atypical and significant only if it is substantially more restrictive than any non-punitive confinement in the State's prison system. 128 F.3d 1173, 1174-75 (7th Cir. 1997).

16.5.)  Inmates in administrative confinement and punitive segregation statuses housed on the restrictive housing unit (RHU), at WSPF-prison don't

(71.)

(Civil Complaint)
Western District OF Wisconsin

have Chairs in their cells or a desk to
sit and eat or write on; whereas,
general population (GP)-inmates do.

16.6.)    RHU-inmates alternatives are:
Placing their meal tray on top of their
mattress-dirting their bed sheets, hold their
meal tray in hand to eat, Fold mattress
and place tray on concret slab, roll mattress
up-sit it on Floor in Front of concret bed
slab and sit on it like a chair; the same
alternatives apply when RHU inmates need
to write a letter or do legal work.

16.7.)    Both, RHU-inmates and G.P-
inmates have a small electronic stand located
away from their beds which the outlets
are located outside their cells-unreachable.

16.8.)    IF inmates have electronics in
RHU; TV & Radio, the meal tray will not
Fit on the stand. Absence the TV & Radio,
RHU inmates will have to stand up to eat
their meals or write a letter and do legal
work; as G.P.-inmates don't because

(72)

(Civil Complaint)

Western District OF Wisconsin

they have a desk at the end of their beds
to eat and write on in addition to their
electronic stand.

16.9.)    Thus, GP inmates aren't subjected
to the daily straining of muscles or
severe mental exertion that RHU inmates
Face caused by something as simple as trying
to eat and write properly.

16.10.)   GP-inmates are allowed to
have their own personal clothes (Greys)-
and clothes to work out in specifically;
as well as shower daily, wash their Greys
in wash bins and or exchange them when
dirty.

16.11.) Whereas, RHU inmates are not
allowed to posses their personal clothes -
work-out clothes: Tank Tops, muscle Shirts
or Shorts.

16.12.) RHU inmates are only allowed
to posses Segregation Clothes (1-set): T-Shirt,
Pullover, Pants, Underwear and socks.

(73)

(Civil Complaint)
Western District OF Wisconsin

16.13.)   RHU inmates receive clean clothes
3 times a week on Mondays Wednesdays and
Saturdays, which are shower days on RHU.
However, RHU inmates only receive clean
pants on Mondays and Wednesdays.

16.14.)   This means in the RHU are
required to work out, if they choose, in their
segregation clothes and require to wear
the same sweaty clothes until next shower
day and cannot exchange their sweaty clothes
For clean ones. For example, if plaintiff
work out on Wednesday after showers later
in that day, as he has done before, he will
have to wait until Saturday (2nd shift) to
exchange his T-Shirt, underwear and socks;
and wait until Monday (2nd shift) to exchange
his pants, whereas GP inmates are not
subjected to unsanitary offensive condition.

16.15.)   Prisoners are entitled to clothing
that is clean. Landfair v. Sheahan, 878
F. Supp. 1106, 1112 (N.D. Ill. 1995) (lack of
clean clothing or means to launder clothing
For an extended time could be unconstitutional).

(74)

(Civil Complaint)

Western District OF Wisconsin

16.16.) RHU inmates only have one Stationary exercise equipment (pull up bar) and not allowed to have weightlifting gloves to work out in. Inmates have to use their bare hands on the pullup bar after multipal RHU inmates have used this exercise equipment without First Sanitizing it.

16.17.) Whereas, GP-inmates are allowed weightlifting gloves, have multipal Stationary exercise equipment to choose From, and can Sanitize the equipment before, during and after.

16.18.) Inmates in general population are allowed to wear their own state coat, Scarf, hat and gloves-mittens during the winter seasons at outdoor recreation.

16.19.) Whereas, RHU inmates are not. RHU inmates have to share (use) the same coats, orange hats and black gloves during the Fall and winter months while at outside recreation. These items are not washed by the prison's -

(75)

(Civil Complaint)
Western District OF Wisconsin

laundry department at the end of the week
but sometimes it takes 2-3 weeks before
they get washed.

16. 20.)    This means that if plaintiff
goes to recreation during the colder months
outside and wear the RHu hat, gloves
and coat and work out in them; when
done, the next RHu inmate will be forced
to wear the same hat, gloves and coat
plaintiff work out in without it first
being washed or sanitized.

16.21.)   Thus RHu inmates (plaintiff)
are left with the following choices:
not go to recreation and wear the same
sweaty gloves; go to recreation and not
wear the items and freeze or go to
recreation; wear the unsanitary items
and risk getting another inmates illness,
disease, Contagious affection on their hands
or head.

16.22.)   For example, plaintiff has
keloids on the back of his head and neck.

(76)

(Civil Complaint)
Western District OF Wisconsin

He is prescribed Triamcinolone cream
(steroid cream) and bacitracin ointment
which he uses twice a day, applying the
creams twice a day to his affected areas.

16.23.) This keloids bleed, pus-out and
becomes itchy - irritable throughout the day.

16.24.) The Sharing OF RHU winter
clothing without First being washed or even
Sanitize has resulted in an unnecessary
Filthy and denigrating environment which
Clearly threatens the physical and mental
well-being of all RHU inmates; whereas,
GP-inmates don't have to be subjected to
Such unhealthy and offensive conditions.
See (Dawson v. Kendrick, 527 F. Supp.
1252, 1264, 1289 (S.D.W. Va. 1981).

16.25.) Inmates in RHU-administrative
Confinement status, are compeled to participate
in and or complete non-A&E programs[16] (such as
PACE) in order to; get a Job on phase 4; get
more phone calls per month; an extra electronic;
progress through PACE and ultimately be release

(77)

(CiVil Complaint)
Western District OF Wisconsin

to general population; whereas GP-inmates are not.

16.26.) AC-PACE inmates are Forced to go to group recreation with other AC-Pace inmates who are also being subjected to long term-AC, and who, administration (ACRC, Warden, etc...), all deem to be dangerous and serious threats towards Staff, inmates, and the integrity of the institution; and iF PACE-inmates refuse to go to group recreation; they will be demoted, retained on a low PACE phase (1, 2, 3.).

16.27.) This PACE requirement (group recreation) clearly creates an unsafe dangerous environment For all AC-PACE-inmates evident by the multipal AC-PACE-inmates who was stabbed and beaten in 2018 and 2019, Since PACE's inception on May 7, 2018.

16.28.) All RTU-inmates (plaintiff) are housed next to, across From or directly behind clinical Observation cells and its inmates, who smear Feces, yell out and bang on their door; in addition

[16] A&E stands For "Assessment and Evaluation".

(78)

(Civil Complaint)
Western District Of Wisconsin

to multipal AC-inmates some who do the same throughout the day.

16.29.) Plaintiff has experienced psychological harm, paranoia, fear, sleep deprivation, chronic stress, depression and exacerbation of his current mental health diagnosis; resulting from being exposed to such unsafe and dangerous Ac-PACE Conditions.

16.30.) General population inmates are not being exposed to or housed next to, across from, or behind Clinical Observation Cells, Clinical Observation inmates, mental unstable punitive segregation and AC inmates. They are free from this cruel and unusual Condition(s).[17]

16.31.) See Inmates of Occoquan v. Barry, 717 F. Supp. 854, 868 (D.D.C. 1989).

_____

[17]   Administrative Confinement inmates, Punitive segregation inmates, and clinical observation inmates and cells are all on the restrictive housing unit (RHU).

(79)

( Civil Complaint )
Western District OF Wisconsin

16.32.)    RHU-inmates are Subjected to
Chemical agent Fumes, via poor-Ventilation-
System, whenever a rebellious or deranged
RHU inmate get Sprayed by Unit Staff and/or the
Shift Supervisor.

16.33.)    This threatens RHU inmates
physical health and well being resulting in
inmates respiratory System (organs) being
Attack by the Chemical agent Saturating
the air in their Cells; Whereas, G P Inmates
are not Subjected to Such Chemical agent
Fumes attacking their physical health.

16.34.)    G P-inmates are allowed to
have multipal visits from their Family and
Friends a week at three (3) hours each
visit; get to hug their Family/Friends; take
pictures with them.

16.35.)  Whereas, RHU inmates Can
only receive 1-1 hour visits a week
via Video Screen; which Causes extreme
Stress and depression Coupled with the
other affects of long term Solitary Confine-

(80)

(Civil Complaint)
Western District OF Wisconsin

ment and existing mental health diagnosis.

16.36.) While any of these Conditions
Standing alone might not be sufficient to create
a liberty interest, taken together they impose an
atypical and significant hardship within the
correctional context. It follows that plaintiff
have a liberty interest in avoiding confinement to
Segregation. Wilkinson V. Austin, 545 U.S. 209,
223-24, 125 S. Ct. 2384 (2005); see Iqbal V.
Hasty, 490 F.3d 143, 163 (2d Cir. 2007).

XVII.       Claims For Relief

17.1.) The actions of defendant Hulce in
Submitting a incomplete, inaccurate and false
evidence in support of his AC-recommendation,
and of defendants Schwarm, Broadbent, Beiz,
Boughton and Schwochert's' reliance on it —
affecting plaintiff's Classification, denied him
due process of law in violation of the Four-
teenth Amendment of the U.S.C.

17.2.)   The actions of defendants —

(81)

(Civil Complaint)
Western District OF Wisconsin

Kartman and Broadbent in denying the three witnesses plaintiff requested and any witness Statements, for no rational basis; Kartman's refusal to do his Job to review plaintiff's requested witnesses pursuant to Doc 303.84 — allowing Broadbent to; defendants Schwenn and Belz's adoption of the denial of plaintiff's witnesses; defendants Boughton, Schwochert, Ray, Jaeger, Hompe and O'Donnell upholding Broadbent's reasons for denying plaintiff's witnesses; denied the plaintiff due process of law in violation of the Fourteenth Amendment to the U.S.C.

17.3.) The actions of defendants Schwenn, Broadbent, and Belz in finding that continued AC was necessary — providing a false reason for decision (that plaintiff was a threat), when the records and evidence didn't support their findings, and of defendants Boughton and Schwochert upholding their reasons for decision; denied plaintiff due process of law in violation of the Fourteenth Amendment to the U.S.C.

17.4.) The actions of defendants Ray, Jaeger, Hompe and O'Donnell —

(82)

(Civil Complaint)

Western District OF Wisconsin

in upholding the procedural errors on appeal —
grievances, refusal to conduct an unbias
Prioritize investigation into plaintiff's Ac-
hearing procedural claims; denied him due process
OF law in violation OF the Fourteenth Amend-
ment to the U.S.C.

17.5.) The actions of defendants Boughton
and Schwenn in conspiring to retaliate against
plaintiff by orchestrating a predetermine and
Sham Six-month AC review hearing OF plaintiff,
defendants Broadbent and beiz s' adoption of it, and
of all defendants upholding of the predetermine
Sham review hearing; denied plaintiff due process
of law in violation of the Fourteenth Amendment
to the U.S.C.

17.6.) The actions oF deFendants Schwenn,
Boughton, Broadbent, Betz and Schwochert in
intentionally treating plaintiff differently at his
Six-month AC review hearing From similarly
Situated AC-inmates, not giving plaintiff the
State created liberty intrest in avoiding placement in
AC and right to avoid prolonged retention on
AC, and of Boughton and Schwochert upholding

(83)

(Civil Complaint)

## Western District OF Wisconsin

the differential treatment of plaintiff knowing there was no rational basis for it; denied him the Equal Protection of the Laws in violation of the Fourteenth Amendment to the U.S.C.

17.7.)   The actions of defendants Boughton and Schwenn in Conspiring to retaliate on plaintiff by using his six-month Ac-review hearing as a means to do so for engaging in protected activity, While guisering their retalitory Conduct under plaintiff's review hearing - creating the facade of due process, defendant Boughton appointing Broadbent to perfect the next stage of the reprisal to hold the predetermine and mock Ac review hearing and to perfect the reprisal punishment of continue Ac for another six(6) months, inwhich Belz adopted, and of Schwoochert, Ray, Jaeger, Hompe and O'Donnell upholding defendants Boughton and Schwenns' retaliation, denied the plaintiff the right to be free from retaliation For using the prison's grievance system in violation of the First Amendment to the U.S.C.

17.8.)   The actions of defendant Schwenn in lieing that plaintiff refused to talk to her -

(84)

(Civil Complaint)

Western District Of Wisconsin

about AC affecting him, because he Filed a grievance against her and Simcox the day before alleging they have not held a consultation with him about the internal affects of AC, and of Simcox in upholding Schwenn's retaltory lie, For Simcox refusing to see him in retaliation For the grievance, denied plaintiff the right to be Free From retaliation for using the prison's grievance system in violation of the First Amendment to the U.S.C.

17.9.)        The refusal of defendants Simcox and Schwenn in not Conducting an immediate consultation in response to plaintiff's Psychological Service Request (PSR) about AC affecting him, Only attemping after plaintiff's grievance was Filed against them, Constituted deliberate indifference to the plaintiff's Serious mental health needs in violation Of the Eighth Amendment of the United States Constitution.

17.10.) The refusal of defendants Simcox and Schwenn in not taking reasonable steps to ensure plaintiff received a fair Consultation and treatment From an unbias-

(85)

(Civil Complaint)

Western District OF Wisconsin

mental health professional, disregarding his repeated request to speak to simcox and his previous psychologist despite their knowledge of the conflict of interests with several PSU staff (schwenn) and his serious mental health-medical needs, the utter disregard for plaintiff's internal issues due to AC affecting him, and of their utter disregard of future risk of harm to plaintiff; constituted deliberate indifference to the plaintiff's and other prisoner's mental health needs and safety in violation of the Eighth Amendment of the United States Constitution.

17.11.) Defendants Simcox and Schwenns' actions contributed to and proximately caused plaintiff's internal issues, mental health issues and prescribed psychiatrict medications.

17.12.)   Finally, the actions of defendants (all) in contributing to plaintiff's continued administrative confinement for another six-months (6) in addition to the time already spent in AC, their failures to recognize the serious consequences and sufficiently serious-

(86)

( Civil Complaint )

Western District OF Wisconsin

atypical significant hardships that long term
solitary Confinement creates, the disregard of
extreme Care that should be exercise in the
higest level when assessing the need or continue
need For administrative Confinement; denied
the plaintiff the right to be free from harsh
Conditions that creates atypical significant
deprivations Compared to ordinary prison
Conditions, in violation of the Eighth Amend-
ment's prohibition against Cruel and unusual
punishment.

XVIII.   Relief Requested

18.1.) Wherefore, plaintiff requests that
the Court grant the following relief :

18.2.) Issue a declaratory Judgment stating
that :
        The retaliation of the plaintiff by
defendants Simcox and Schueun violated the plaintiff's
rights under the First Amendment.

18.3.) Defendants-(All) actions in —

(87)

(Civil Complaint)

Western District OF Wisconsin

Conducting the predetermine Sham six-month AC review hearing of the plaintiff, and their actions in sustaining it, violated the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

18.4.)   That defendants Broadbent, Belz, Boughton, Schwenn and Hulce and Schrodert denied plaintiff Equal Protection of the Laws in violation of the Fourteenth Amendment.

18.5.)  That defendant Simcox's and defendant Schwenn's actions in failing to hold an immediate consultation in response to his PSR, their actions in failing to provide mental health treatment, disregarding his serious mental health needs violated the Plaintiff's rights under the Eighth Amendment.

18.6.)   That long term solitary confinement conditions creates atypical significant hardships and psychological issues on prisoners.

18.7.)   That prisoner's six-month AC–

(88)

(Civil Complaint)

Western District Of Wisconsin

review hearings are predetermine by the Warden, Boughton.

18.8.) Issue an injunction ordering defendants Broadbent, Boughton, Kartman and Schwochert to:

18.9.) Release the plaintiff from administrative Confinement Status (AC) and place him in general population status, with restoration of all rights and privileges.

18.10.) Stop using State justification as a means to keep prisoners at WSPF - RHU in long term administrative Confinement Status, and have some one from Central Office in Madison (high-level) review inmates releases.

18.11.) Award Punitive damages in the Following amounts:

$ 20,000 each against all-defendants For the deprivation of liberty and amenity, and the mental and emotional injuries resulting From the defendants repeated denials of due -

(89)

(Civil Complaint)

Western District OF Wisconsin

process in connection with the plaintiff's Ac-
hearing and Ac-appeal processes.

18.12.) $ 15,000 each against defendants
Hulce, Broadbent, Schwenn, Belz, Boughton and
Schwochert For their differential treatment
without justification denying plaintiff Equal
protection of the Laws.

18.13.) $ 20,000 each against defendants
Stincox and Schwenn For their intentional
deliberate indifference to his PSR, and
serious mental health needs — internal issues.

18.14.) $ 25,000 each against defendants
Stincox, Schwenn and Boughtons' For their
retaliation against plaintiff For using
the "prison's grievance system" against them.

18.15.) $ 15,000 each against all defendants
For subjecting plaintiff to harsh Ac-
Conditions that presented a dramatic departure
From the basic Conditions of ordinary prison
Conditions.

(90)

(Civil Complaint)

Western District OF Wisconsin

XIX.        Jury Demand

19.1.) Plaintiff request that a Jury hear
this case.


XX.        Request to Proceed In District
           Court Without Prepaying The
           Full Filing Fee - Service Fee.

20.1.) Plaintiff request he be allowed to File
this Complaint without paying the Filing Fee/
Service Fee. He has completed a Request to Proceed
In District Court without Prepaying the Full Filing
Fee Form and have attached it to this Complaint.


           Pursuant to 28 U.S.C. §1746,
           I declare under penalty of perjury
           that the Foregoing is true and
                   Correct.

Dated this 11th day of November, 2019.

Eric Conner #420475 - Pro se Litigant
USPF, P.O. BOX 1000
Boscobel WI 53805            (91)