IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ERIC CONNER,

                                                              OPINION AND ORDER

             Plaintiff,

                                                                19-cv-921-bbc

    v.

HEATHER SCHWENN, ANTHONY BROADBENT,
TOMAS BELZ, GARY BOUGHTON, MARK KARTMAN,
JIM SCHWOCHERT, PETER JAEGER, ELLEN RAY,
BRAD HOMPE, CINDY O'DONNELL and
ANDREW HULCE,

                                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Eric Conner is incarcerated at the Wisconsin Secure Program Facility, where he has been housed in administrative confinement since November 2016. He filed this proposed civil action under 42 U.S.C. § 1983, contending that correctional staff and administrators violated his constitutional rights in various ways in conjunction with an administrative confinement review hearing that resulted in his remaining in administrative confinement for an additional six months. Because plaintiff is incarcerated, his complaint must be screened under 28 U.S.C. § 1915A.

Plaintiff's complaint is more than 90 pages in length and names several officials as defendants. His overarching concern is that his April 10, 2019 administrative confinement review hearing was procedurally flawed, violated his right to equal protection, amounted to retaliation for his filing a grievance against defendant Schwenn and subjected him to inhumane conditions of confinement. Although plaintiff also contends that defendant

1

Schwenn and other psychological services staff were deliberately indifferent to his mental health needs in violation of the Eighth Amendment, dkt. #1, § XV at 62-74, those allegations involve separate incidents and a different set of defendants from the allegations related to the review of his administrative confinement. Rule 20 of the Federal Rules of Civil Procedure prohibits plaintiffs from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (multiple defendants may not be joined in a single action unless plaintiff asserts at least one claim against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents questions of law or fact common to all). Although plaintiff alleges that defendant Schwenn was involved in both incidents, it would be unwieldy to allow plaintiff to maintain his claims regarding his administrative confinement against one set of defendants in the same lawsuit as his claims that a different set of defendants failed to provide him timely and adequate psychological treatment. Therefore, I will sever plaintiff's proposed Eighth Amendment claim regarding psychological care, which he may choose to bring in a separate lawsuit, subject to a separate filing fee. Lee v. Cook County, Illinois, 635 F.3d 969, 971 (7th Cir. 2011) (court may sever claims under Fed. R. Civ. P. 21 when differences between the claims predominate over common questions); In re High Fructose Corn Syrup Antitrust Litigation, 361 F.3d 439, 441 (7th Cir. 2004) (court has inherent authority to sever claims in interest of justice even when standard under Rule 21 is not satisfied).

      Having reviewed plaintiff's allegations regarding his administrative confinement, I

conclude that he has failed to state a constitutional claim upon which relief may be granted against any of the defendants.

Plaintiff alleges the following facts in his complaint.

ALLEGATIONS OF FACT

A.  The Parties

Plaintiff Eric Conner is incarcerated at the Wisconsin Secure Program Facility, where most of the defendants are employed. Gary Boughton is the warden; Peter Jaeger is the deputy warden; Mark Kartman is the security director; Anthony Broadbent, Tomas Belz and Andrew Hulce are correctional officers; Heather Schwenn is a psychologist in the psychological services unit; and Ellen Ray is an inmate complaint examiner. The other defendants work in Madison, Wisconsin. Cindy O'Donnell is Secretary of the Department of Corrections, Jim Schwochert is the administrator for the Division of Adult Institutions and Brad Hompe is a corrections complaint examiner.

B.  The Administrative Confinement Process

Administrative confinement is an involuntary "non-punitive" status in which an inmate is placed in segregation because he poses a serious threat to himself or other inmates, staff, property or the security of the institution. Wis. Stat. § DOC 308.04(1). The administrative confinement review committee evaluates inmates in administrative confinement every six months (or 120 days) to determine whether continued administrative

3

confinement is necessary. § DOC 308.04(7)-(10). An inmate may appeal the committee's decision to the warden and the administrator of the Division of Adult Institutions, who have final decision making authority. However, an inmate may challenge any procedural errors through the inmate complaint system.

Inmates in administrative confinement may earn their way into general population by participating in the "PACE" program, which consists of five phases, with fewer restrictions placed on the inmates as they progress through the five phases. For example, inmates in phase one through three remain in full restraints each time they leave their cell, but inmates in phase four may leave their cell without restraints as long as a unit officer is present. A multi-disciplinary team evaluates each inmate in administrative confinement on a monthly basis to determine what phase they will be placed in. The warden and security director review the team's recommendations.

### C. Plaintiff's Past Administrative Confinement

On March 9, 2015, plaintiff was placed in disciplinary separation at Waupun Correctional Institution for 360 days after being caught with a manufactured weapon. After serving this term, he was placed in administrative confinement until he was released into general population on August 2, 2016. On September 20, 2016, plaintiff was transferred to the Wisconsin Secure Program Facility and placed in disciplinary separation because he had received several conduct reports after he had entered general population at Waupun. On November 30, 2016, he was placed in administrative confinement at the Wisconsin

4

Secure Program Facility, where he remains. By November 2018, plaintiff was promoted to phase four of the PACE program. (Defendants Kartman and Boughton approved the PACE promotion in early December 2018.)

### D. Plaintiff's Grievance Against Defendant Schwenn

On April 1, 2019, plaintiff filed an inmate grievance alleging that defendant Schwenn and two other staff members threatened to demote him to phase three of the PACE program if he refused to talk with them about his mental health issues on March 25. Defendant Ray dismissed the grievance on April 2, and defendant Boughton dismissed plaintiff's appeal on April 3. Defendants Hompe and O'Donnell dismissed plaintiff's subsequent appeals.

### E. April 2019 Review of Plaintiff's Administrative Confinement

On April 1, 2019 defendant Hulce submitted paperwork recommending plaintiff's continued placement in administrative confinement, based at least in part on a November 24, 2015 conduct report for which plaintiff was found guilty of disobeying orders but not guilty of making threats to staff.

On April 3, 2019, plaintiff received notice that an administrative confinement review hearing was scheduled for April 10. Plaintiff submitted a six-page written statement and requested that Hulce and two other correctional officers be called as witnesses at his hearing and be allowed to submit written statements. On April 8, defendant Broadbent, who was serving as the administrative confinement review committee chairman and hearing officer,

5

denied plaintiff's requests to call witnesses and submit their written statements, stating that the correctional officers' testimony was irrelevant and that Hulce was unavailable because he was working a different shift.

Defendants Schwenn, Broadbent and Belz served on the review committee at plaintiff's April 10, 2019 review hearing. Defendant Boughton appointed Schwenn to the committee even though he knew plaintiff had filed a grievance against her. Plaintiff objected to Schwenn's inclusion as a committee member because he feared that she would be biased against him for his filing of the April 1 grievance, but Broadbent refused to remove her from the panel. At the hearing, defendant Hulce's statement was read aloud but plaintiff's statement was not.

The review committee unanimously voted to keep plaintiff in administrative segregation for another six months, resulting in plaintiff's being in administrative confinement for a total of three and a half years. Defendants Broadbent, Boughton and Schwochert have released from administrative confinement other inmates (including an inmate named Carson) who, unlike plaintiff, had received major conduct reports within six months of their review, had refused to participate in programs and had multiple phase demotions in the PACE program.

Plaintiff filed an appeal with defendant Boughton, who affirmed the committee decision on April 15, 2019. Defendant Schwochert affirmed Boughton's decision on April 22.

Plaintiff also filed an inmate complaint alleging that the review hearing was retaliatory

and violated his right to procedural due process. Defendant Ray dismissed the complaint on April 30, 2019, stating that she had reviewed the hearing packet and did not find any procedural errors. Defendant Jaeger affirmed that decision on May 8, and defendant O'Donnell accepted his recommendation on May 17.

In May 2019, plaintiff sent letters to defendants Hompe and O'Donnell, requesting that their offices independently investigate his claims of due process violations and not rely on the inmate complaint review system. Hompe denied plaintiff's request on June 4, and O'Donnell summarily affirmed that decision on June 28.

### F. Conditions of Confinement

Inmates in administrative confinement stay in their cells 23 hours a day and do not have most of the property or privileges that inmates in general population have. The cells are poorly ventilated, so there are often fumes from chemical agents used by staff to subdue problem inmates. Inmates in administrative confinement also are subject to the following restrictions:

- No chair or desk, which forces inmates to sit on their beds or floor to eat or write. Although there is a small bedside stand for a television or small electronics, there is no room for a meal tray.

- No personal clothing or separate workout clothing. Inmates receive a change of clothing only three times a week, meaning that they are forced to remain in sweaty clothes if they work out.

- No sanitizer to wipe down the communal pull up bar and no weightlifting gloves.

- Shared outdoor clothing (jackets, hats and gloves), even though these

> items may not be cleaned for two to three weeks.

- Required participation in certain programs and group recreation.
- Only one hour of visitation via video per week.

OPINION

A. Due Process

Plaintiff contends that defendants violated his right to due process under the Fourteenth Amendment because he was not given fair process during his administrative review hearing on April 10, 2019. To state a due process claim, plaintiff must allege facts suggesting that (1) he had a liberty interest in not being kept in administrative confinement, and (2) he did not receive the procedural protections that he was due. Townsend v. Cooper, 759 F.3d 678, 685 (7th Cir. 2014); Gillis v. Litscher, 468 F.3d 488, 491-92 (7th Cir. 2006).

With respect to the first factor, "'the Fourteenth Amendment provides to inmates a liberty interest in avoiding transfer to more restrictive prison conditions if those conditions result in an 'atypical and significant hardship' when compared to 'the ordinary incidents of prison life.'" Townsend, 759 F.3d at 685 (quoting Sandin v. Conner, 515 U.S. 472, 483-484 (1995)). An atypical and significant hardship may arise when an inmate is placed in segregation for an extended period of time, which is generally considered to be a period of more than 90 days. E.g., Toston v. Thurmer, 689 F.3d 828, 832 (7th Cir. 2012); Lekas v. Briley, 405 F.3d 602, 612 (7th Cir. 2005); Fields v. Achterberg, 2018 WL 1474181, at *4 (W.D. Wis. Mar. 26, 2018). In this instance, plaintiff alleges that defendants' actions

kept him in administrative confinement for an additional 120 days. As discussed below, plaintiff did not endure particularly harsh conditions during those 120 days, but he alleges that he has been kept in administrative confinement at the Wisconsin Secure Program Facility continuously since November 2016. A judge in this court has held that inmates likely have a liberty interest in avoiding continued, long-term placement in segregation. Rodriguez v. Haines, No. 14-cv-86-jdp, 2015 WL 9296308, at *5 (W.D. Wis. Dec. 18, 2015) ("Indefinite detention in segregated confinement could cause an atypical and significant hardship [because] Wisconsin does not limit the maximum time that an inmate can spend in administrative confinement."). See also Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983) (inmates have due process right to periodic review of administrative segregation placement), abrogated in part on other grounds by Sandin, 515 U.S. 472); Westefer v. Neal, 682 F.3d 679, 686 (7th Cir. 2012) ("Of course, administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates."). Therefore, plaintiff's allegations are sufficient to show the deprivation of a liberty interest at this stage of the proceedings.

As to the second aspect of plaintiff's due process claim, placement in administrative confinement requires only "an informal, nonadversary evidentiary review," under which the "inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Hewitt, 459 U.S. at 476 ("Ordinarily a written statement by

the inmate will accomplish this purpose."). See also Westefer, 682 F.3d at 685-86 (informal due process does not require written decision describing reasons for inmate's placement or the submission of additional evidence or statements, and it does not mandate appeal procedure). In this case, plaintiff alleges that he was denied the opportunity to present witness testimony during his hearing and that Boughton and the decisionmakers on his review committee were biased against him because he filed a grievance against defendant Schwenn. Plaintiff's allegations are not sufficient to show that he failed to receive the procedural protections he was due.

Plaintiff does "not have a constitutional right to call witnesses or to require prison officials to interview witnesses" in an administrative review hearing. Westefer, 682 F.3d at 685 (citing Wilkinson v. Austin, 545 U.S. 209, 228 (2005); Alston v. DeBruyn, 13 F.3d 1036, 1042 n. 2 (7th Cir.1994)). Although he has a right to impartial decisionmakers, Wilkinson, 545 U.S. at 226, his allegations do not suggest that he was denied the procedural protection of an impartial or biased review committee. Plaintiff alleges that defendants Boughton, Broadbent, Schwenn and Belz had reason to be biased against him because he had filed a grievance against Schwenn on April 1, 2019. However, plaintiff's accusation is based on nothing more than speculation. Plaintiff apparently assumes that these defendants would take adverse action against him because he complained about Schwenn. However, there is nothing to suggest that this was the case. Schwenn was not facing any charges at the time she served on plaintiff's review panel. The grievance against Schwenn was dismissed on April 2, and Boughton affirmed the dismissal on April 3, well before plaintiff's April 10

administrative hearing . Without more to suggest bias on the part of defendants Boughton, Broadbent, Schwenn and Belz, plaintiff cannot state a procedural due process claim against them.

Plaintiff also contends that defendant Hulce violated his due process rights by intentionally including in his recommendation outdated charges for which plaintiff was not found guilty and by not identifying the programs that plaintiff successfully completed to be promoted to phase four of PACE, all in an attempt to show that plaintiff continued to pose a threat to others. However, falsely accusing a prisoner of an offense, or even filing a false charge or conduct report, does not in itself violate the constitution. Lagerstrom v. Kingston, 463 F.3d 621, 625 (7th Cir. 2006) ("[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process.") (internal quotations omitted); McPherson v. McBride, 188 F.3d 784, 786-87 (7th Cir.1999) ("[W]e will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent."). Plaintiff may not proceed with a due process claim against defendant Hulce.

Plaintiff's allegations that defendants Kartman, Schwochert, Jaeger, Ray, Hompe and O'Donnell dismissed or denied various complaints that he filed about his administrative hearing process are also insufficient to state a due process claim. To be held liable under § 1983, a defendant must have caused or participated in constitutional violation. Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012); Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). Ruling against plaintiff on his inmate complaint or grievance does not

qualify as personal involvement in a constitutional violation and is not enough to state a claim. McGee v. Adams, 721 F.3d 474, 485 (7th Cir. 2013); George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Although plaintiff may believe that these defendants should have done more to help him because of their positions within the prison, the Court of Appeals for the Seventh Circuit has rejected the "contention that any public employee who knows (or should know) about a wrong must do something to fix it" and held that "there is no general duty to rescue." Burks, 555 F.3d at 596. In addition, prison officials are under no obligation to provide an effective grievance procedure, or for that matter, any grievance system at all. Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Therefore, plaintiff has failed to state a due process claim against defendants Kartman, Schwochert, Jaeger, Ray, Hompe and O'Donnell.

B. First Amendment

Plaintiff alleges that defendant Boughton appointed Schwenn to his review committee and that defendants continued his administrative confinement because he had filed a grievance against Schwenn. To prevail on a First Amendment retaliation claim, a plaintiff must prove three things: (1) he was engaging in activity protected by the Constitution; (2)

12

defendants' conduct was sufficiently adverse to deter a person of "ordinary firmness" from engaging in the protected activity in the future; and (3) defendants subjected the plaintiff to adverse treatment because of the plaintiff's constitutionally protected activity. Gomez v. Randle, 680 F.3d 859, 866-67 (7th Cir. 2012); Bridges v. Gilbert, 557 F.3d 541, 555-56 (7th Cir. 2009).

Plaintiff's allegations are sufficient to satisfy the first two requirements of this standard. A prisoner's right to file a grievance has been recognized as a constitutionally protected activity, Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005), and the imposition of an additional six-months of administrative confinement is sufficiently adverse to deter a person of "ordinary firmness" from filing grievances in the future. Bridges v. Gilbert, 557 F.3d 541, 552 (7th Cir. 2009) (unjust disciplinary charges may chill speech and be a basis for an actionable First Amendment retaliation claim); Walker v. Bertrand, 40 Fed. Appx. 988, 989 (7th Cir. 2002) (sentence of segregation sufficient basis to state a First Amendment retaliation claim); Jackson v. Thurmer, 748 F. Supp. 2d 990, 1003 (W.D. Wis. 2010) (45 days in disciplinary segregation sufficient injury to state First Amendment retaliation claim). However, plaintiff's allegations that defendant Boughton assigned Schwenn to the committee even though he knew about plaintiff's grievance against her, that defendant Broadbent refused to remove Schwenn from the committee after plaintiff complained of possible bias and that defendants Broadbent, Schwenn and Belz all voted to keep plaintiff in administrative confinement for another six months because he had complained about Schwenn in the past are not sufficient to suggest that defendants acted

13

with a retaliatory motive. As discussed above, plaintiff's allegations of potential bias are nothing more than speculation and do not suggest that these defendants took adverse action against plaintiff because he complained about Schwenn instead of some other reason. Therefore, plaintiff has failed to state a First Amendment retaliation claim against defendants Boughton, Broadbent, Schwenn and Belz, or any of the defendants who ruled against him or dismissed his complaints during the administrative appeal process.

### C. Conditions of Confinement

The Eighth Amendment requires prison officials to provide prisoners with "the minimal civilized nature of life's necessities," including adequate bedding and sanitary conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016); Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006). Prison officials violate the constitution if they are "deliberately indifferent to adverse conditions that deny 'the minimal civilized nature of life's necessities.'" Farmer, 511 U.S. at 834. "[C]onditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" Budd v. Motley, 711 F.3d 840, 842-43 (7th Cir. 2013) (citation omitted).

Plaintiff's allegations that he was kept in a cell for 23 hours a day with no chair, desk, personal clothing, hand sanitizer or weightlifting gloves and was forced to share outdoor clothing and participate in certain programming and group recreation are not sufficient to

14

suggest that he was deprived of the "minimal civilized nature of life's necessities." Although plaintiff's living conditions would be more comfortable with a chair, desk, weightlifting gloves or adequately-sized bedside table, inmates do not have a constitutional right to be free from all discomfort. Hudson v. McMillan, 503 U.S. 1, 9 (1992) ("routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society'")(internal citation omitted); Estate of Simpson v. Gorbett, 863 F.3d 740, 745 (7th Cir. 2017) ("[C]onditions 'may be uncomfortable, even harsh, without being inhumane.'").

Plaintiff contends that the limited access to freshly-cleaned clothing, shared outdoor clothing and lack of hand sanitizer expose him and other inmates to possible infection or disease, particularly when he has open keloids or scars on his head and neck, but his allegations are speculation and do not suggest that he faced any real or significant health and safety risks. Locke v. Schmidt, No. 18-C-443, 2018 WL 2048373, at *3 (E.D. Wis. May 2, 2018) ("Although Plaintiff may prefer that he receive fresh laundry more often, his allegation that the laundry schedule leaves him smelly and sweaty, especially after exercising, is merely a complaint that the laundry schedule makes him uncomfortable."). Inmates have a right to adequate ventilation, but to be unconstitutional, the ventilation must be so poor as to constitute punishment. Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1087 (7th Cir.1986). Plaintiff's allegations that he could sometimes smell fumes from chemical agents used by correctional officers in subduing inmates do not suggest that he or other inmates faced a substantial risk of serious harm to their health. Therefore, plaintiff has failed to state an Eighth Amendment conditions of confinement claim against any of the

defendants.

## D. Equal Protection

Plaintiff attempts to bring "class of one" equal protection claims against defendants Broadbent, Boughton and Schwochert for singling him out for mistreatment. In particular, he alleges that these defendants released other inmates from administrative confinement even though they (unlike plaintiff) had received major conduct reports within six months of their review, had refused to participate in programs while in administrative confinement and had been demoted in the PACE program.

A plaintiff may bring a "class-of-one" equal protection claim for being treated "intentionally . . . differently from others similarly situated" for no rational reason. D.S. v. East Porter County School Corp., 799 F.3d 793, 799 (7th Cir. 2015) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). See also Flynn v. Thatcher, 819 F.3d 990, 991 (7th Cir. 2016). However, class-of-one claims are generally disfavored in the prison setting, particularly where they involve discretionary decision-making by prison officials. Lewis v. Henneman, No. 16-cv-733, 2018 WL 2390117, at *7 (W.D. Wis. May 24, 2018); Talioferro v. Hepp, No. 12-cv-921, 2013 WL 936609, at *6 (W.D. Wis. Mar. 11, 2013) (collecting cases). Decisions to place or keep an inmate in administrative confinement necessarily depend on that inmate's specific relationships to staff and other prisoners, conduct history and the particular security needs of the institution at the time the decision is made. Hewitt, 459 U.S. at 474-75 (describing discretionary nature of

administrative confinement process).  Although plaintiff suggests that inmates with worse records than his were released from administrative confinement, he does not allege that another inmate with his same history and threat level was treated differently from him.  In any event, plaintiff would not have sufficient personal knowledge or security expertise to be able to support such allegations.

In addition, plaintiff does not suggest that he was "irrationally singled out" for different treatment because he alleges that defendants actually had a reason, albeit an improper one, for treating him differently from other inmates.  He contends that he received additional time in administrative confinement in retaliation for filing a grievance against defendant Schwenn.  Therefore, plaintiff's class-of-one equal protection claim is simply a repackaged version of his due process and retaliation claims, on which I have denied plaintiff leave to proceed.  The claim fails for the same reasons as his due process and retaliation claims fail.  Therefore, plaintiff may not proceed with a class-of-one equal protection claim against any defendant.

ORDER

IT IS ORDERED that this case is DISMISSED for plaintiff Eric Conner's failure to state a claim upon which relief may be granted.  A strike shall be recorded in accordance with

28 U.S.C. § 1915(g). The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 21st day of February, 2020.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge